Good morning, Your Honors. Kai Palenko for Plaintiffs. May I reserve five minutes for rebuttal? You may, but again, you have to watch your time. Yes, Your Honor. There are two independent reasons why AMN cannot show that the per diems qualify as payment for expenses. First, the undisputed evidence establishes that there is no causal connection between the payment of the per diems and the incurrence of expenses. Whether expenses are incurred and the extent to which expenses are incurred are simply not a factor in whether the per diems are paid. Would your answer be the same if they didn't have two features? If they took away the banking and if they took away the fact that people who don't go out of town get the same thing? If you change those two, is your answer still the same? If the facts were changed such that the incurrence of the expenses was the trigger that caused the payment to be made, then at least that component of our argument would be satisfied, but it would still not qualify because the per diems are tied to hours worked. So even if you have, if we had a system where it was only for out-of-towners and we didn't have the banking, but, you know, the company takes into account that we send you out of town for three days' work, but you actually stay out of town for five because you're going to go, you know, to Disneyland while you're out of town. They don't get to make an adjustment for that? That would make it wages rather than, you know, an effort to identify the work-related expenses? Well, let's be clear what AMN does here. You know, while they cap the total amount of the per diems at the federal CONUS rates, it does not simply pay that amount for each day that the clinicians are away from home, nor do they adjust the amount of the per diems to reflect a change in the amount of expenses incurred or a change in the number of days away from home. It's solely based on the quantity of work performed. So when an adjustment is made, it is made because hours were not worked, not because expenses were not incurred. The law is clear. Where the measuring unit used to calculate the per diem is the number of hours worked, as opposed to the amount of expenses incurred, the per diems function to supplement wages, not to reimburse expenses. That can be adjusted across the board. I mean, for example, I mean, take us. Our law, we are assigned to sit out of town a certain, say, a week. And some of it's similar. Sometimes we sit three days, but we get per diems for five, essentially, because it's more expensive to come home and go back. But suppose that the, in fact, we're only sitting two days, and there's consecutive days, and the rule is, all right, once you're done with your work, you have to go home, or we don't care if you go home, but we're not going to pay for you. That is being measured to some degree by how much you're working, right? In other words, if you're only working Monday and Tuesday, you're only getting per diems for Monday and Tuesday. We don't care whether you're still away from home. But the point is, it's a per diem for expenses incurred, not a wage for work performed. Well, but that's the question, not the answer. I mean, in other words, this is a peculiar system because they are paying for seven days, even though people are working, I gather, about three, is that right? That's correct. Three 12-hour shifts, typically. Right, and so it becomes more complicated because it's not, I mean, I gather it's a legal system, but it's not, it's legal, I mean, in both the tax sense and the FLSA sense, but they're getting per diems, they are getting per diems for days not worked. They're getting per diems for days not worked because they are away from home on AMN's business. The assignment requires the clinicians to be away from home. What was the rule was that if you're not going to work all three days that you're assigned to have to go home? That you have to go home? Then I think it would be okay. If it's tied to the amount of time away from home, then that's not a problem. But if it's tied to the amount of work performed, then it is a problem. The law is clear on that. And let me just say that, you know, this gets into the reason why AMN claims to be adjusting the per diems. They speculate that if they had not tied the per diems to hours worked, it would have improperly reimbursed clinicians' personal expenses and violated the requirement that expenses be incurred in furtherance of the employer's interest. But that is an abstract legal question based on hypothetical facts that is not actually before the court on this record. It is undisputed that AMN did tie the per diems to hours worked, and plaintiffs do not challenge whether the expenses were incurred in furtherance of AMN's interest. Rather, plaintiffs challenge the threshold issue of whether the per diems are payment for expenses in the first place. So in essence, AMN seeks an advisory opinion that it had to do what it did because if it had not, it would have violated its own interpretation of a separate legal requirement that is not challenged in this case. Can I ask something else? What does it mean they declined to work? I mean, they have a contract that they have to work a certain amount. Now, does this cover, for example, if you're sick? Does it cover personal leave? I mean, or does it just cover people who are going to breach their contract and not work when they're supposed to work? What does it mean decline to work? My understanding is a per diem adjustment is charged any time hours are not worked for any reason other than the facility canceling the work. Including being sick. I'm sorry? Including being sick. Including being sick, correct. Yes, so if a nurse was working in California and they live in Pennsylvania and they contract COVID and they can't go to work, the policy would apply and a per diem adjustment would be made, even though the nurse or the clinician cannot fly back home because they're sick. And so they're still incurring housing expenses. But I want to go back to my first point, which is that here there is no causal connection at all between the payment of the per diems and the incurrence of the expenses. It's simply not a factor. Wait a second. I mean, it is the fact that you don't have to itemize expenses is often a feature of per diems. That's why they're called per diems, means by the day. And as long as there is some reasonable connection between your likely expenses and not. So you can't be saying that you have to itemize or else it's no good. That's not what I was saying, Your Honor. What I was saying is AMN pays the per diems to all clinicians on all assignments without regard to whether the assignment requires travel away from home and indifferent to whether the clinician incurs any expenses. I mean, we're not saying that clinicians who travel away from home do not incur expenses. Oftentimes they do. The argument is that the incurrence of expenses is not the reason why the per diems are paid. The fact that some clinicians happen to incur expenses does not change the fact that the per diem is paid regardless of whether those expenses are incurred. And the per diem is also paid if you are living someplace, in your daughter's house and cooking dinner as usual. Yes. They don't look to see, for example, if my hypothetical, the clinician from Pennsylvania had family members in California and were not incurring any housing expenses, the per diem would still be paid. In essence, the incurrence of expenses is simply not a factor in whether the per diem is paid. And that makes this case somewhat unique. Secondly – Counsel, before you move on to your next – give me an example in this record of what you were just talking about in regards to whether or not the per diem was paid or not. Well, it was paid to everybody is what I understand you're saying, whether they were traveling or not. Yes, and I think that is undisputed. Give me a second. I'll find the record site. It's ER 160, fact number 33. Fact number 34. I understand that this was disputed, I guess because the response was disputed, but the dispute was some suggestion that maybe these people who lived more than 15 miles from the house were incurring travel expenses, but they weren't denying that. It was going to people whether or not they were incurring travel expenses. That's right, Your Honor. AMN did not dispute that non-traveling clinicians received the per diems. Just the opposite. They admitted that the evidence, quote, shows that clinicians who are on assignment with AMN receive lodging and meal and incidental per diems regardless of whether they are working within 50 miles of their tax home or further than 50 miles of their tax home. What they disputed – I'm sorry, I didn't hear you, Your Honor. Is there anything in the record regarding the relationship of the amounts listed as wages as opposed to per diem to the usual wages for similar clinicians in the areas where they were working? Well, yes, because the way it works is when clinicians are traveling more than 50 miles from their tax home, the wages are one portion, and then the per diem is the other, and that's their total. But what I want to know is the amount – in some of the other cases, the amount listed as wages was very low as compared to the amount of wages usually paid for similar people in the geographical area. Is there anything in this record making that comparison? I don't think there is, but I do think that's an even stronger fact, is that in none of the other cases that I'm aware of did the company actually pay the per diem to employees who did not include expenses. I also somewhat suspect that it's a relatively low wage. $27 an hour for a nurse sounds very low to me, but there's nothing in this record about that. I don't think there's anything specifically in the record, but if you look at what the non-traveling clinicians get in wages, the wage rate is much higher because AMN reclassifies the per diem as a wage, so their wage rate necessarily is much higher. 100 percent of it is considered to be a wage, whereas when they're traveling more than 50 miles, they deem the part to be a per diem an expense reimbursement, and then the wage rate is the other half, which is a lot lower. Secondly, even if there were some link between the payment of the per diems and the incurrence of expenses, the undisputed evidence establishes that the per diems function not to reimburse expenses but to compensate for hours' work. AMN, you know, does not simply pay the amount of the federal CONUS rates. What it does is, nor does it adjust the amount of the per diems to reflect the change in the amount of expenses incurred or the number of days away from home. Instead, it makes the adjustments solely based on the quantity of work performed. For all clinicians on all assignments, the per diem is based exclusively on and varies solely with the number of hours worked. Well, two things. First of all, they put a lot of emphasis on the fact that it doesn't go up with more hours. No, because the fact that the per diem is capped at a certain amount, which is the federal CONUS rates, doesn't change the fact for the hours worked below that cap, those per diems had to be earned and are based on the number of hours worked. Secondly, there's this banking feature, which really isn't discussed in the briefs, although it is front and center in the Undisputed Facts and seems pretty important. But I couldn't quite tell. It seems clear that you can bank hours worked the week before and get credit for them in the following week in the per diem. Is that right? That's my understanding, yes. Even if you're not working for the benefit of the employee that week, in those hours you still get per diem for those hours. My understanding of the way the banking works is that I don't think it matters whether the banked hours were incurred before the per diem adjustment was made or after the per diem adjustment was made. My understanding is they look at the total length of the assignment. And if you, for example, sustained a per diem adjustment in one week and then in the following week you worked some extra hours, you could apply that to offset the per diem adjustment. But that seems inconsistent with representation that you don't get paid. It doesn't go up if you work more hours. Well, it doesn't go up if you work more hours than the minimum required. In that scenario, we're talking about... In the week that you're getting the banked hours, you're working more weeks. And then you're banking the hours and then you're getting the per diem for it, so you are getting more. You are getting per diem for extra hours in the week that you're working on. Well, perhaps. You're allowed to use that extra per diem as a credit toward a deficit in another week. So, I mean, that seems to pretty much demonstrate that it's not connected to how much in a given week you're actually working for the employer. I agree. What I wanted to clarify is I don't think that... I think the argument is that it's capped, is that they don't pay more on any particular day than the government CONUS rates allow. All right, you're just about out of time. Unless the court has any other questions, I'll reserve the rest for Rebecca. We don't have time, but I'll give you a minute. Thank you. You have 20 seconds. All right. Ms. Carl Rosenbaum. Good morning, and may it please the court. My name is Sarah Carl Rosenbaum, and I represent AMN. Section 2072 of the FLSA permits employers to exclude from the calculation of the regular rate reasonable payments for expenses incurred in furtherance of the employer's interests and properly reimbursable by the employer. That's exactly what AMN does with respect to the challenge per diems here. I'd like to use my time this morning to explain why AMN's met its burden, why this court need not deviate from the standards established in Flores and Leucol 246, and address some of the points that were just discussed to explain why this... Sorry, Your Honor. We're dealing with an opposite... First of all, they weren't dealing with this subsection. They were dealing with the other factual. And second of all, they ran in the other direction. They said the fact that it's not attached to hours doesn't prove that it's not compensation, but it doesn't say that the fact that it is attached to hours doesn't prove that it is compensation. Right. So in both Flores and Leucol 246, which were other similar payments cases, they were not per diem or reimbursement cases, so didn't deal with the incurred in furtherance of the employer's interest portion, first of all. But fundamentally, in both of those cases, it was the defendant employer who said that it was the fact that those payments were not paid on an hourly basis meant that they were not wages and they should be excluded from the regular rate. The court rejected those arguments and said, no, it's the character of the payments that matter here. In both cases, those were wages. In both cases, those were taxable. In our case, it's the appellants who make the technical argument that some reductive calculation should be determinative here, and it's contrary to the prior holdings of this court. There's no dispute about the character of the per diems. The appellants themselves. What about the two features I identified before, the banking feature and the fact that it's also paid to everyone, regardless of whether they go out of town? Don't those two features show that it's divorced from any notion of expenses incurred? No, Your Honor. First, with respect to the banking, which, as you've observed, is barely presented in the briefing here and does not get much coverage in the record, the standard under... There are several undisputed facts in both directions that cover it, so it's fairly established facts about it. Absolutely. And with respect to the banking, the plain language of the statute allows for a reasonable payment for expenses incurred, and AMN has permitted that banking. It is part of the reasonable estimate. Now, this class, to be clear, consists of approximately 11,000 traveling clinicians. It does not include anyone who is working a so-called local assignment. And those clinicians, the people working local, make up a very, very small minority of all of the clinicians working for AMN. And those people who do receive per diems, those per diems are treated as wages. They are included in the regular rate, and they are also taxed. The Fifth Circuit... If they're getting it regardless of whether or not you're incurring expenses, that certainly is a strong suggestion that this is really part of the wages. Well, as the vouch court recognized, the Eighth Circuit recognized in vouch, per diems could be either included or excluded from the regular rate, and each circumstance warrants individualized factual assessment. That's why the Fifth Circuit in Berry rejected a similar comparison. But the core has to be, I mean, if there is a line here, that it's tied to, in some meaningful way, to expenses. But the banking feature and the universality of it seems to divorce that. The banking goes by how much you work, do you get credits or not. So the connection to expensing, Carmen, seems broken by those features. Well, Your Honor, we have not seen in this record any example of how that banking operates on an individual basis. And both plaintiffs here testified they used the per diems, which, again, are based on CONUS rates within CONUS rates, which are presumptively reasonable appellants. Don't dispute that here. They testified they actually used the per diems to cover their living expenses while they were... I'm just going to say that if you work... It was somewhat contradictory about whether you can do it in a single week. It was clear that if you work more in week one, then you need to. And then in week two, you quote, decline to work. One of your shifts, you can take hours from the previous week and apply them to the second week and get the per diem, even though you're not, in fact, working during that period. So that seems to indicate that it isn't really a question of whether you're incurring the expenses that week. It's a question of your overall record with regard to showing up for work. Well, Your Honor, there's... First of all, I think factually someone would have to work an entire shift to get the credit of that shift to offset the adjustment. Well, first of all... Okay. And second of all, again, everyone... There is no dispute about that. We all are incurring living expenses all the time. The question is, under this analysis, on whose behalf are those... On your theory, which is beautiful. They're not incurring living expenses on behalf of the employer when they work less than the contracted hours in a given week. But you're not enforcing that because you say if you worked more than your number of hours in a previous week, even though you didn't do this week's work, on the requisite amount on behalf of the employer, we're still going to pay you the per diem. Well, as AMN's 30B6 witness testified, it is AMN's reasonable attempt to allow clinicians to meet their contractual obligations in advance. And again, the standard under the statute, the plain language... But it just reinforces the notion that this isn't about whether they're working on behalf of the employer. It's about an incitement to show up for work. Well, the question under that circumstance is whether it's reasonable for someone to incur an expense in advance, effectively, on behalf of the company. It is AMN's reasonable attempt to do this. My understanding is it no longer happens. Well, there's a cap that you won't pay anybody for more than the amount of time they contracted for in a given week. I'm sorry, Your Honor, I missed the beginning of your question. Some proof that this is not connected to hours is that there's a cap on it in any given week. It turns out there actually isn't a cap on it. Well, with respect to the functioning, though, to use the language of the court in Flores and Local 246, it is not functioning such that people can work more hours in a day and receive more per diem, and thus it doesn't function like a wage. More hours in a week and get a higher per diem. They are entitled to an offset, or they were during the class period. More fundamentally, though, there's no dispute that these per diems, people use the CONUS reimbursements to cover their expenses during their assignments, that they were reasonable, and that when the only reason that when people... Sorry, I also just want to address one thing briefly, which is that when the facility cancels, the clinicians do not receive an adjustment. It is about whether the clinician opts to go to work or not and thus incur expenses on their own behalf. If they're sick and you don't want them coming to work, you're still doing it. Is that correct? That is correct, but I would suggest, Your Honor, that there are, again, there's 11,000 people in this class. Whether somebody doesn't go to work because they go to the beach or whether they go work for a competitor for a day, which is possible in this industry, whether they are sick, whether that's communicable or not, all of those facts depend, and that is a question, then, of on whose behalf the expense is incurred, which is not what plaintiff's case is about. If somebody is 3,000 miles away from home and gets the coronavirus and doesn't go to work and can't leave, they are not there on behalf of the employer. In fact, they are there on behalf of the employer. That's why they're there. And, Your Honor, you know, this class period far preceded this pandemic period, and those determinations – What kind of – I can't hear. I think that my understanding is that person would receive an adjustment. They would be entitled to other benefits. This isn't punitive. This is about whether the expense was incurred in furtherance of the employer's interest, and AMN's reasonable compliance with the plain language of Section 2072 and the regulations which support it, which make clear the expense must be incurred on behalf of the employer's business, and as Mr. Polanco said, that they are incurring expenses on AMN's business when they are working their assignments. I see, Your Honor, that I am over time. So unless the Court has further questions, I will conclude. Thank you. Unmute. Oh, there we go. I'm very sorry. Margaret Grignot for Amicus Curiae American Staffing Association. I'd like to present to the Court an argument that this decision that the Court's going to make is important not just to the parties, not just important to traveling nurses or clinicians, and not just important to staffing firms that are represented by American Staffing Association, but it's actually important to every employer who has employees who travel away from home to perform services. And for that reason, I think it's critical that there be a consistent treatment between the tax consequences and the labor consequences. And that's what Congress has intended. If you look at the Internal Revenue Code and the Fair Labor Standards Act, it becomes clear that Congress intended that these two provisions be consonant or be treated the same under the similar circumstances. The Fair Labor Standards... Can I just ask a question? Yes. That's... There are arguments against what you're saying because the language is different and so on, but let's assume it for the time being. Under the IRS rules, if somebody works during... If the IRS policy is, as long as you work... We're going to send you far away from home, and as long as you work... And as long as the cost of your coming back... More than... They do pay travel expenses, in my understanding. As long as the cost of your coming back is more than you're staying there and getting per diem, we're going to pay you per diem, because you're there on our benefit for the next time you're going to work. Is that not a tax-deductible expense for IRS reasons? That is not taxable income to the employee because the employee is at the site for the seven days, in this case, on the employer's behalf. And that's true whether they get sick one day and can't work or not. Let me just give you an example. If you work three days, you get to have seven days of living expenses. If you work two days, then it's harder to justify that the whole week is for the employer's benefit, and so therefore, the way I understand the proportionate deduction would be that you get two-thirds of the per diem. It's adjusted to take into account that you're not working a full week for the employer's benefit. And so that would qualify... The employer could say, all right, if you're going to work just two days, you have to come home, if that was cost-effective for the employer. So, for example, if you work Monday and Tuesday, we want you to come home, we'll pay for your airfare, because it's cheaper for us than you're staying there the rest of the time. But if it's more expensive for the employer to have them come home, then why aren't they there on behalf of the employer, even if they're not working that time on behalf of the employer? Honor, the Internal Revenue Service regulations provide that if a per diem is paid to an employee, and the employee is not at work for the employer on that day for the benefit of the employer, then the employee must return that portion of the per diem tax. Well, the entire scheme they have here involves taxable expenses, because they're paying for seven days when they're only there for two or three. Yes, Your Honor, and no one has ever indicated or argued that that's not proper. That is proper under the... I mean, it's not proper. On your theory, it's not proper. Your Honor, no one in this case or the Internal Revenue Service has suggested that it's not okay to pay... It isn't proper. You're telling me that if they didn't work that day, they can't get paid for that day a non-taxable amount. So we're in another universe than the one that we're dealing with here. That day is a day where they were supposed to be working, a 12-hour shift, and they were not working. So they clearly were not... What about the days that they weren't supposed to be working? On your theory, they can't get per diems for that time either that are non-taxable. Not under my theory, Your Honor. Under my theory, the four days in the week that they're not supposed to be working and they're not working, they are there on the employer's behalf. But the one day... I think you're dealing with an IRS rule that you're not working on a certain day you can't get a per diem. That's what you're telling me. The IRS rules say that if you don't work an advanced per diem, if you're not working on behalf of the employer, then you must return it, or the plan is not an accountable plan that qualifies for purposes of... Therefore, the whole plan is not an accountable plan. I disagree, Your Honor. I don't know how else to say it. I don't know if it's true or not. I'm just telling you what you said. When you're traveling to and from work, when you are having to stay at work because the employer is asking you to stay at work, then those count as being at work on behalf of the employer. When you are supposed to be working on a particular day, and you choose not to work, you are not there for any of those reasons. Not because the employer has asked you to work, not because you're traveling, not because you're there because it's more expensive to stay than come home. I think it's important to focus on two things. What this case is not about. Plaintiffs have never argued, and as Plaintiffs' Counsel indicated, there's no evidence that the nurses are not paid a reasonable salary in addition to their per diems and their overtime rates. There's nothing in the record to indicate that they're not paid a reasonable salary. Number one. And the cases that have decided that these kinds of plans are wages focus on the fact that they're really disguised wages. We have no evidence of disguised wages here. Secondly. We have the fact that people who aren't traveling are paid the same amount. Yes, Your Honor. And in the Berry case, the court said, you look at the people that are getting the per diems and whether those qualify as per diems for travel expenses. Reasonable per diems. Well, they may be saying that, but it doesn't make any sense because it's pretty good evidence that this is actually a wage. Yes, Your Honor. It is a factor. I understand that it's a factor, and it is a factor that may be specific to this case and not any other case. So I'd like the court to focus on the fact that they are paid a reasonable salary. Plaintiffs don't contend otherwise. Number two. Plaintiffs have conceded that these per diems are for the approximate expenses that the employees will incur while they're traveling. They've conceded that in the separate statement. So they can't come back now and say they're not for expenses. They are for expenses. I don't think it's a heart attack and can't work for two days. They're still there on behalf of the employer. They went there on behalf of the employer, and they're going to go back to work, and they're still there on behalf of the employer. Your Honor, there's no evidence of that in the record. The only evidence in the record is with respect to Ms. Clark. So first, Ms. Whitman had no adjustments to her per diem whatsoever. Ms. Clark had an adjustment because of a family emergency. She went home. She left the work assignment in the middle of the week and went home, and she incurred an adjustment to her per diem. So that's the only example that we have. But that's not how the plan works. You just confirmed that if you get sick during the week and not only don't you go home, but you couldn't go home, you're too sick, and you're only there because of the employer, you're still not going to get paid. Your Honor, let me focus on what I'm going to be asking the court to do. I'm asking the court to apply a consistent rule that the employers can know what to do. So sometimes, if you look at the voucher case, for example, sometimes the income tax benefits are more valuable to the employees than the increase in the regular rate. Sometimes some employees do better with an increase in the regular rate, and some employees do better with the tax benefits. In the end, the employers need to know what the rule is and that that rule will be applied consistently across the board to tax and employment. You can't have that it's non-taxable for tax and at the same time that somehow it's taxable income included in the regular rate for the employees. So for that reason, I would ask the court to hold that where the employees are paid a reasonable rate, they receive expenses in addition to that for travel expenses, they qualify as accountable plans under the Internal Revenue Code, and they don't exceed the CONUS rate, that this court hold that those amounts are not included in the employees' regular rate. All right. Thank you, Raymond. Mr. Polanco, we'll give you a few minutes for rebuttal. Thank you, Your Honor. Real quick on the tax issue. I think there are a red herring. Defendants don't cite to, and we're not aware of, any tax rule that requires per diems to be tied to hours worked, nor have they pointed to any authority, and we're, again, not aware of any, that links a payment's tax treatment to its inclusion in or exclusion from the regular rate. And as the Eighth Circuit explained in Bausch, the tests are different. And so the fact that a ruling in one will not negate or direct a ruling in the other. So I just want to clarify that. Some other issues that were raised. I agree the banking of the hours in this case shows that, as Judge Collins noted, the per diems are completely divorced. There's absolutely no connection between the incurrence of expenses and the payment of per diems. With regard to we're not challenging the reasonableness of the amount of expense, that's true, but we're challenging the method used to calculate the amount of the payment. And we're saying it's not a payment for expenses. And then finally, on the furtherance of the employer's interest prong. Again, I don't think that's properly before the court, but I will note that no authority supports AMN's contention that the amount of work performed determines the nature of the expenses. In fact, the regulations make clear that expenses incurred while traveling on the employer's business are not personal expenses. It is undisputed that the expenses AMN contends are personal expenses are incurred while clinicians are traveling on assignments for AMN. Their travel does not cease to be on AMN's business simply because AMN is dissatisfied with the quantity or quality of their work. So long as AMN continues to employ the clinician on a travel assignment, the clinician's expenses are incurred while traveling on AMN's business. If AMN is dissatisfied with a clinician's work performance and wishes to stop paying the per diems, the company is free to remove the clinician from the assignment or terminate the employment relationship at any time. But it cannot continue to employ the clinician on a travel assignment and unilaterally deem the expenses to be personal expenses whenever work is not performed to its satisfaction. Okay, thank you for your time. Thank you very much. Thank you. Park v. AMN Services is submitted. And we will go to Jack Hoff v. McAllen.
judges: Baldock, Berzon, Collins